CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

MAY 10 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

| | |
|---|---|
| United States of America<br>v.<br><br>Larry Wayne Price, Junior<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:18 MJ 74<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 18, 20, and 23, 2018__ in the county of __Tazewell__ in the __Western__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 1001(a)(2) | knowingly and willingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

David M. Britten, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/10/18

_____
Judge's signature

City and state: Abingdon, Virginia        Hon. Pamela Meade Sargent, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

IN THE MATTER OF THE ARREST OF: )
LARRY WAYNE PRICE, JR. )
)

UNDER SEAL

Case No._____

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

1. I, David M. Britten, a Special Agent with the Federal Bureau of Investigation, Richmond Division, Bristol Resident Agency, having been duly sworn, depose and state as follows:

### INTRODUCTION

2. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations and to make arrests for the offenses enumerated in Section 2516 of Title 18, United States Code.

3. I have been employed as a Special Agent with the FBI for approximately 20 years. I am currently assigned to the Bristol Resident Agency (BRA) located in Bristol, Virginia. Prior to working in the BRA, I had several other assignments within the FBI. I was assigned to the Operational Technology Division at FBI Headquarters (FBIHQ); overseas assignments as an FBI Legal Attaché in the Middle-east and East Africa; Training Division FBIHQ; Directorate of Intelligence FBIHQ; and Buffalo Division. I have supervised national security and criminal investigations. I have served as the case agent on multiple terrorism and criminal investigations, to include criminal narcotics investigations, and investigations involving digital communications. I have taken part in numerous federal investigations concerning international terrorism, espionage, narcotics distribution, public corruption, fraud, homicide, crimes against children, bank robberies, and cybercrimes

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence that violations of 18 U.S.C. § 1001(a) (2) (makes any materially false, fictitious, or fraudulent statement or misrepresentation) have been committed by Larry Wayne Price Jr.

### STATEMENT OF PROBABLE CAUSE

6. On 04/18/2018 at approximately 1:58 a.m., Amy Price (DOB: 03/05/1981) reported her

1

husband, Larry Wayne Price Jr. (DOB: 02/23/1980) of 900 Tanager Drive Bluefield, VA 24605 missing to the Bluefield, VA Police Department (BVPD). Officers with the BVPD spoke to numerous individuals associated with Price and the last known contact with Price was approximately 8:00 p.m., on 04/17/2018. After the filing of the missing person report, the BVPD and Tazewell Sheriff's Office (TCSO) began an intense missing person investigation which would come to include Virginia State Police helicopter resources, canine resources, and hundreds of Federal, State, and local investigative man hours. BVPD Officer Mooney contacted Verizon emergency service to ping the location of Price's cell phone. Price's cell phone last pinged off of a tower on 162 Combs Court in Tazewell, VA. During the morning hours on 04/18/2018, Price's white Mercedes bearing a Montana tag of BKG836 was located at the Park and Ride near the Crab Orchard in Tazewell County, VA.

7. On or about the morning of 04/18/2018, TCSO Deputy Sergeant R. Holt contacted the Bristol FBI/RA (BRA) to provide information regarding the case.

8. On 04/18/2018 at approximately 9:00 p.m., Price was located by a driver who noticed him on the side of the road on Route 61 near Gratton, VA. Price was taken to the hospital where he was interviewed by BVPD Detective McCroskey. Price told the McCrosky that he was kidnapped by two unknown white males, drugged, and held against his will until he was thrown out of a van near where he was found. Price told McCroskey that he was taken from Tazewell County, VA, to Hawg Pit Cycles in Bluefield, WV, where he believed his keys were taken and the store safe was robbed. Price said the unknown men pointed a gun at him, searched his pockets and took his pocket knife and his 9mm Sig. pistol. Price owns Hawg Pit Cycles. Price told McCroskey that when the door to the van was open he recognized the Hawg Pit parking lot. Price also told McCroskey that there was no security video at Hawg Pit Cycles. McCroskey noted in his police report that Price had approximately $3774.49 in cash in his front jean pocket when he was found.

9. TCSO and BVPD investigation as of 04/20/2018 had determined that there was a video surveillance security system at Hawg Pit Cycles. A review of the security video for 04/17/2018 to 04/18/2018, along with interview and physical inspection revealed that the store had not been disturbed, nor was there any indication of a white van, or any robbery.

10. On 04/20/2018, FBI SA Britten along with IRS SA McMurray interviewed Larry Wayne Price Jr. (Price) and his wife Amy Price regarding the incident. Interviewing Agents arrived at the Price residence at approximately 11:45 a.m., and rang the front door bell, with no answer. SA Britten called the mobile telephone number believed to belong to Price and there was no answer. SA Britten then called the mobile telephone number believed to be used by Amy Price and left a voice mail message. Believing that someone was at the residence, interviewing agents drove to the back of the house where there were three automobiles parked near a three car garage and exited their vehicle. The middle garage door opened and SA Britten identified himself to the mother and father of Price, who were sitting in the garage. The father, Larry Price Sr., said that his son and daughter in law were sleeping and he invited agents into the residence while he proceeded to get Price.

2

11. Price and his wife Amy came to the kitchen and the agents introduced themselves. Price invited agents to the back office to talk. The interviewing agents followed Price to the back office and were invited to sit and the interview began at approximately 12:06 p.m.

12. Price said that on Tuesday, 04/17/18, he was approached by an unknown white male (UWM1) near his (Price's) parked vehicle on Main Street in Tazewell, VA. This unknown male initiated a conversation about Price's vehicle which transitioned to a conversation about a motorcycle UWM1 wanted to sell. Price described UWM1 as mid-fifties, same size, but shorter than SA Britten; wearing a denim blue jean shirt and blue jean jacket. UWM1 spoke with a local accent. Price said UWM1 asked to meet at the park and ride near the crab orchard. Price said he drove to the park and ride and was met there by UWM1 and a second unknown white male (UWM2). He was told that he should get in what Price described as a white work van without windows or seats. Price said he was told that he would not want to drive his Mercedes SUV there. Price said the side door of the van was opened and UWM2 was pointing a semi-automatic pistol at him. UWM2 was described at a big obese guy, bushy hair, in his forties, wearing a black hoodie/jacket, and jeans. UWM2 spoke with a local accent. Price said he was searched, and then said he gave them his own pistol, a small auto compact handgun, his knife, and his mobile phone. Price was allowed to keep approximately "a couple thousand" dollars he had in his pocket. Price said UWM2 put a damp rag on his face which burned his skin and made him disoriented. Price said the rag gave him the taste of something metallic. Price said he was made to sit on the floor of the dark van for a very long time without speaking to anyone. He said he thought he was at the parking lot of the Hawg Pit, in WV, when they opened the door. Before, when the police asked him, Price had believed that they took his keys and robbed the Hawg Pit. Now, Price said he found his keys in his truck and that he was not at the Hawg Pit. Price said that at a certain point he was made to sit on the floor of a dark room at an unknown location. He was given a small bottle of water to drink. Price said he was not tied up, but the damp rag had made him disoriented. Price said that the damp rag was placed on his face again and he found himself being thrown out of the van, and when he looked up it was dark and he saw headlights. He said the damp rag made it so that he, "couldn't get feet under me". Price said as they threw him out of the van, he was told, "no one could find you for 24 hours. Imagine if we didn't want them to find you."

13. Price said he was taken to the hospital and provided with a catheter, because his potassium was low. Price said he thought he was taken by someone he owed money to. He said that before he was taken, he had prayed with his minister on the phone over a business decision. Price was advised of United States Code, Title 18, Section 1001, which in part provides that it is illegal and punishable by fine or imprisonment up to five years for lying to a federal agent.

14. At approximately 1:00 pm Price said that he need to get something to drink and asked if the interviewing agents wanted something. Interviewing agents were invited to follow Price to the garage, where Price took a soft drink and two bottles of water out of a large industrial sized stainless steel refrigerator. Price gave a bottle of water to each

3

interviewing agent. Interviewing agents noticed Amy Price was looking at her mobile phone while sitting at a chair near the kitchen. Price's parents were in the garage, sitting in chairs, while several children appeared to be playing with several pet dogs, and feeding them dog food on the garage floor.

15. Price and interviewing agents returned to the back office and continued the interview at approximately 1:05 p.m. When asked, Price said, "Everything I told you is 100% true." Price then said he was concerned for his family. When pressed about to whom he owed money that would kidnap him, Price said that maybe he should "plead the 5th" and did not want to tell who or what his business was that was behind his kidnapping. Finally, Price said, that he had not told everything, but had told the truth about some of it. He said that maybe he needed to speak with his wife and attorney. Price was advised that he did not have to talk about whatever, "that" was. Price then thought about it and asked to speak to his wife.

16. At approximately 1:15 p.m., Amy Price was asked to come to the back office and from approximately 1:18 p.m. to approximately 1:28 p.m., Price was alone with his wife, Amy, in the back office, with the door closed; while interviewing agents waited in the hall. At approximately 1:28 pm SA Britten knocked on the door and was invited in.

17. At approximately 1:28 pm the interview resumed with Amy present in the room. Price was sitting in his reclining chair with his wife sitting beside him. Both appeared distraught. Amy said nothing. Price said he thought it best just to say that he made it all up, he needed to clear his head, and say he disappeared on his own. Price appeared to be unwilling to say anymore in front of his wife, Amy. SA Britten asked if the interviewing Agents could speak alone with Price. As Amy was leaving the room, Price asked SA Britten if he was "afraid that I will run" because you came with me to get the drinks. SA Britten replied that Price was free to leave if he wanted to and was not compelled to do anything.

18. At approximately 1:31 p.m., the interview resumed, without Amy present. Price said that he was concerned for the safety of his family. Interviewing agents reiterated to Price that in order to best help him, he needed to tell the interviewing agents the truth about what happened on the night he was reported missing. Price said he was trying to break it off with someone. Price was asked if he was having an affair, maybe with Witness 1 (W1). Price smiled and denied any affair with W1 or any other woman. Price was informed that the police had checked the phone of W1 in an effort to find him and noticed a significant amount of contact between his phone and W1 the day he disappeared. Price explained that W1 managed the Seven Restaurant that he owned and that she had recently received a compliment from one of the patrons and Price wanted to meet with W1 about her job. Price blurted that if he were to tell everything it would make him free. When pressed, Price alluded that he was in a business deal with dangerous people. Finally, SA McMurray asked if he was involved with an outlaw motorcycle gang. Price said yes, the Pagans.

19. Price reclined back in his chair and said that he was friends with the former President of

4

the West Virginia (WV) Pagans, Steve Purdue (now deceased). Price said that Purdue was a retired railroad employee. Price explained that on or about 2011, Purdue had asked him for access to coal train schedules and locations associated with Price's coal business relationships. Price said he was coerced into facilitating the transportation of methamphetamine for the Pagans, and now he was afraid that the Pagans were going to try and harm his family.

20. Price told of a Pagan, with the name patch of Spinner or Sinner, who met him at the Hawg Pit with Rick LNU (Last Name Unknown). Price said they walked up and said we need to talk. On Friday, 04/13/2018, Price said he approached someone at the La Fiesta Restaurant he knew to be a Pagan and told him they needed to set up a meeting. He met this person again on Tuesday, 04/17/2018, at the La Fiesta and was directed to meet UWM1 at the gas station off of Route 460. From there Price was instructed to meet at the park and ride near the Crab Orchard. At the park and ride he voluntarily got in the white van with UWM1 and UWM2, and surrendered his phone, knife, and pistol. He maintained that he was drugged, with the damp chemical rag, and ended up being taken to an unknown location where he sat alone on a hard cold floor in a dark room. Price said that he told them that he had legal troubles and wanted the Pagans to understand it would be best to sever their relationship.

21. On 04/23/2018, FBI SA Britten along with IRS SA McMurray and AFT SA Duke interviewed Larry Price and his wife Amy Price to follow-up on the alleged abduction and threat. Interviewing agents arrived at the Price residence at approximately 2:00 pm and drove to the back of the house where the garage door opened and Mr. Price's mother said that 'LJ" was sleeping and that she would get him. She invited the interviewing agents into the house. Mr. Price came down the stairs and all headed to the back office. Price described Rick as being in his late 40s, approximately 5 feet 10 inches tall, medium-heavy build, black bushy hair, long gray beard –combed to a point, and having unknown tattoos. Price described another Pagan contact as having a vest which read "Spinner" or "Sinner". Spinner was described as being smaller than Rick. Price said he approached Spinner at the La Fiesta Restaurant on 04/13/2018 and told Spinner that they needed to meet. Price provided that Spinner approached him at La Fiesta on Tuesday, 04/17/2018. Spinner told Price to meet at the gas station on Route 460 at 8:00 pm. The gas station was described as being located east past the old skate rink near Richlands across from the two lane in Pounding Mill, VA. Price said he met with Spinner at the gas station at approximately 8:00 pm on 04/17/2018. Spinner told him to meet at the park and ride near the Crab Orchard. Price said he then met with two unknown white males at the park and ride near Crab Orchard. He said Spinner was not there, nor was Rick. Price maintained that he was drugged by a damp rag placed over his face. He was taken to an unknown location and made to sit on the floor of a dark room. He said he was given one small bottle of water. Price said he didn't see anything familiar and did not know where he was. Price said the damp rag caused him to have a headache, gave him the taste of metal, and a nose bleed. Before he was released, Price said they placed the damp rag on his face again. When he was helped out of the van on the side of the road, they told him if they didn't want him to be found, he wouldn't be found.

5

22. Price told interviewing agents that he had the empty box of the pistol that was taken from him by the Pagans. Price said the box would identify the pistol which he said the Pagans took from him and voluntarily gave the box to SA Britten. The box was for a Ruger LC380 semiautomatic pistol, indicating serial number 323-59673 for a blued model LC380 Auto containing the following items: 1) An empty Ruger zippered pistol carrier; 2) a Ruger firearms padlock with key; 3) sealed envelope Sturm Ruger & Co. Inc. 200 Ruger Road Prescott AZ 86301, FFL# 9-86-025-07-3F-14472, serial # 323-59673, date: 03/27/2013, handwritten "Pistol 7 - Paul Ferriera, Make: Ruger, Caliber: 380 Auto, Type: Pistol, Model: 03219, Grooves/Twist: 6 R.H., Turns: 1 in 10.00". The envelope had a small tear and contains what appears to be an expelled casing; Ruger Lightweight Compact Pistols manual; plastic magazine attachment; and a box of Hornady #90102 380 Auto 90 gr XTP with 19 rounds of ammunition.

23. After Price was found on the evening of 04/18/2018, he was taken to the Tazewell Hospital. On 04/18/2018, TCSO investigators obtained Price's permission to gain access to his medical records of treatment for 04/18-18/2018. Drug screening indicated that no drugs were detected and alcohol level was less than .01%.

24. On 04/26/2018, SA Britten and BVPD Detective McCroskey reviewed the security video for La Fiesta restaurant and noted that Price entered the La Fiesta at approximately 2:32 pm on 04/17/2018, purchased a soft drink, and left the restaurant. Based on the security footage, Price did not meet with anyone, nor was anyone in the La Fiesta Restaurant matching Price's description of Spinner.

25. After the filing of the missing person report, the BVPD and Tazewell Sheriff's Office (TCSO) began an intense missing person investigation. Part of that investigation included obtaining a telephone log of Price's cell phone. Investigators have noted that a majority of contact was between Price and a telephone number which belongs to Witness 1 (W1).

26. On 04/25/2018, FBI SA Britten along with VSP SA Parker interviewed W1. W1 denied any affair with Price, and said she did not know where Price was during his alleged abduction. W1 said that she was a good friend of Price and knew him to consume Red Bull and a lot of Goody's Powder. W1 said that Price rode with her to look at rental property on the afternoon of 04/17/2018. Along the way, W1 said they stopped at a fast stop where Price purchased Red Bull and Goodies Powder. W1 provided consent to examine her mobile telephone. A review of W1's text messages revealed a series of messages on 04/25/2018 between W1 and a third party in which W1 communicated that she had sex with LJ Price at least once on or about December 2017.

27. On 05/03/2018, W1 contacted SA Britten and said that she wanted to speak with him. Later that same day, SA Britten along with IRS SA McMurray interviewed W1. W1 apologized for not telling the whole truth during the previous interview and explained that she believed she was helping a friend, but had come to realize that she had made a terrible mistake and that Price had used her. W1 said that she had known Price for a long time and they went to high school together. W1 considered Price a close friend and that developed into occasional intimacy with Price. After the beginning of 2018 Price and W1 began to have conversations about wanting to disappear. On or about February 2018,

6

Price asked W1 if she wanted to run away with him and disappear, she said yes. W1 and Price discussed the need for W1 to locate a private residence and that W1 would need to take care of Price, when he disappeared, or until they could work out a more permanent plan. W1 said she lived with her mother and was ready for a place of her own. W1 said that on or about the first Saturday of April 2018, Price asked W1 if she had found a place to live, W1 said she was still looking. Price offered to help W1 find a place. At approximately 2:00 pm on 04/17/2018, Price met W1 at Seven Restaurant in Tazewell, VA. Price parked his vehicle on Main Street and rode with W1 to look at rental properties in Bluefield, VA. Price told W1 that he was ready to disappear and needed a more private place. W1 contacted her father and was given permission to live in the vacant house he owned at 3143 Gratton Road, Tazewell, VA; next door to his residence. W1 dropped Price off at his vehicle on Main Street at approximately 5:00 pm on 04/17/2018 and drove to Walmart to get things that Price would need at the house on Gratton Road. W1 said she bought Red Bull, Coke, chips, socks, underwear, towels, and sundries. W1 said Price told her he would need a phone and she bought a cellular phone at Walmart. After Walmart, W1 drove to the house on Gratton Road and brought the things she had bought into the house. W1 then drove to the Seven Restaurant at approximately 8:25 pm, her office at approximately 8:30 pm, and at approximately between 8:45 pm and 9:00 pm met Price at the Park and Ride near the Crab Orchard in Tazewell, VA. Price left his vehicle at the Park and Ride and drove with W1 to the house on Gratton Road. W1 stayed with Price through the night of 04/17/2018, and at approximately 6:00 am on 04/18/2018, W1 left Price in the bed at Gratton Road and returned to her residence and later to work to appear "business as usual" as Price instructed. W1 returned to Gratton Road to check on Price at approximately 10:30 am on 04/18/2018. W1 said that when she left Price at approximately 11:00 am on 04/18/2018, he was in the bed in the back bedroom. W1 said that Price had turned off his old phone, soaked it in water and placed the phone in the freezer. Price told W1 that he could not get the new phone to work. W1 tried to activate the phone, but she could not because she said Price had put a security code on the phone and she did not have it. W1 took the old phone and on her way back to Tazewell, pulled over at a wide pull off location on Gratton Road and threw Price's old phone out her window.

28. On the evening of 04/18/2018, W1 received a call from a co-worker that Price was found on Gratton Road. W1 said she was surprised and worried. She did not know what happened or why Price would be found on the side of Gratton Road. She said she was generally concerned that something bad may have happened to Price. W1 said she went to the Gratton Road house and nothing was disturbed there. W1 said she had Price's pistol, his knife, and the new phone. She said she had the pistol and the knife at her residence along with a few other items she bought at Walmart. W1 said she had the new phone she bought for Price in her vehicle. W1 said she had a receipt for Walmart that she believed would be in the house on Gratton Road. She said there would be other things that she bought for Price at Gratton Road, as well.

29. W1 provided consent to search her residence at 5112 BF Buchanan Highway, Tazewell, VA, and a search was executed on 05/03/2018. W1 led investigators to her bedroom and pointed out the location of Price's pistol. The pistol is described as a compact model Sig

7

Sauer, model P938, 9mm, semi-automatic, black, serial number 52A014774. W1 surrendered a small one-bladed wood simulated handle pocket knife. W1 surrendered a white cellular telephone charger that was purchased by her to charge a phone she had purchased for Price.

30. On 05/03/2018, W1 led investigators to a location on Gratton Road where she stated that she threw Price's old phone out her vehicle window. Investigators noted the location to be a Virginia historical maker labeled "Molly Tynes Ride". Investigators searched the location but did not find the phone. It was discovered that Tazewell County service workers had picked up the trash along that stretch of highway on or about 04/24/2018. On 05/07/2018, TCSO Deputy Sergeant R. Holt advised TCSO questioned the service workers who said they did not find the phone. TCSO was scheduled to conduct a more thorough search of the area for the phone on 05/09/2018.

31. On 05/03/2018, W1 and the home owner Witness 2 (W2) provided a consent to search the Gratton Road house, located at 3143 Gratton Road, Tazewell, VA. Items recovered at the Gratton Road house included a gray plastic Walmart bag, 6 empty Red Bull drink cans, 1 empty Coke can, 1 empty Samsung Galaxy J7 Sky Pro Straight Talk cell phone box with phone related material, 10 empty Goody's Powder packs, 1 black Otter Box cell phone cover, a Walmart receipt dated 04/17/2018, a CVS receipt dated 04/17/2018, and an empty clear plastic cell phone battery wrapper. The items listed on the Walmart receipt included a Samsung cellular telephone, Goody's Powder, Red Bull, Coke, underwear, towels, milk, cereal, snacks, and various sundries. The items on the CVS receipt included a wall charger with usb cord, and toothpaste. There was red Bull and Coke cans in the refrigerator. W2 said that a couple of weeks ago, he noticed W1 bringing items into the residence next to his, and thought it was consistent with W1 moving into the home. W2 said that he farmed most of the day, usually departing to work the farm at approximately between 6:00 am and 7:00 am on most days and returning home at approximately 4:30 pm or 5:30 pm most days. W2 said he did not enter the other residence where W1 was, because there was no reason to. W2 said he did not notice anyone else except W1 at the residence.

32. On 05/03/2018, W1 provided consent to search her vehicle described as a silver Chevrolet Equinox LT, VA registration ADT-1048. A black Samsung cellular telephone was retrieved from the vehicle of W1.

33. On 05/03/2018, investigators noted that the location on Gratton Road where Price was found, on the evening of 04/18/2018, was approximately 2 miles from the Gratton Road house. It was also noted that the location of the tower which Price's cell phone last pinged off of, on 04/17/2018, was less than 4 miles from the location of his vehicle at the Park and Ride and less than 5 miles from the Gratton Road house.

34. 900 Tanager Drive Bluefield, Virginia is located in Tazewell County, which is in the Western Judicial District of Virginia.

35. Investigation of allegations of kidnapping (18 U.S.C. § 1201), methamphetamine trafficking (21 U.S.C. § 841), and other federal crimes are matters within the jurisdiction

8

of the executive branch of the Government of the United States.

## CONCLUSION

36. Based on the aforementioned factual information and my training and experience in criminal investigations, I submit that probable cause exists to conclude that Larry Wayne Price Jr., on or about April 18, 20, and 23, 2018, did knowingly and willingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States in violation of 18 U.S.C. § 1001(a) (2).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on May 9, 2018, at Abingdon, Virginia.

David M. Britten, Special Agent
Federal Bureau of Investigation

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 9TH DAY OF MAY, 2018

HONORABLE PAMELA MEADE SARGENT
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT IN THE
WESTERN DISTRICT OF VIRGINIA

9

Case 1:18-mj-00074-PMS   Document 1   Filed 05/10/18   Page 10 of 10   Pageid#: 10